IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>SAMUEL TORRES-CRESPO [3],<br><br>**Defendant.** | **CRIMINAL NO.** 13-538 (FAB)<br>13-539 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Defendant Samuel Torres-Crespo filed motions for a change of venue in Criminal No. 13-538, (Docket Nos. 68 & 76), and Criminal No. 13-539, (Docket Nos. 54 & 65), as well as a motion for severance of counts in Criminal No. 13-539, (Docket No. 50). Having considered the defendant's motions and the government's responses, (Docket No. 84 in Criminal No. 13-538; Docket No. 74 in Criminal No. 13-539), the Court **DENIES** the defendant's requests.

I.  **Background**

   A.  **Criminal No. 13-538**

      On August 16, 2013, a grand jury handed down an indictment against defendants Torres-Crespo, Wildo Vargas, and Erica Rivera-Castro. (Docket No. 3.) Vargas, a physiatrist, and Rivera-Castro, a psychiatrist, were licensed to practice medicine in Puerto Rico and allegedly met with and referred patients, for a

Criminal No. 13-538 and 13-539 (FAB)                                  2

fee, for Social Security Administration ("SSA") disability insurance benefits, by issuing medical reports claiming that the patients had physical and psychiatric disabilities.  <u>Id.</u> at pp. 1-2.  Defendant Vargas' office then referred the patients to defendant Torres-Crespo, who is not an attorney, who represented claimants for social security disability insurance benefits and submitted forms to the SSA on their behalf.  <u>Id.</u> at p. 2.  Defendant Torres-Crespo also allegedly charged a fee for his services:  25% of the retroactive benefits paid to SSA disability insurance claimants, calculated from the onset date to the approval date.  <u>Id.</u>

      Defendant Torres-Crespo is named in Counts Three and Six in the indictment.  (Docket No. 3.)  Count Three charges him with making false statements or representations to the SSA for use in determining social security disability insurance payments for "Person B," in violation of 42 U.S.C. § 408 (a)(3).  <u>Id.</u> at p. 7.  Count Six charges defendant Torres-Crespo with devising a scheme or artifice to defraud and deprive the SSA of money and property by means of materially false and fraudulent statements, and for using wire communications to effectuate that scheme, all in violation of 18 U.S.C. § 1343.  <u>Id.</u> at pp. 12-13.

    **B.   Criminal No. 13-539**

      Also on August 16, 2013, the grand jury issued an indictment against Torres-Crespo, Vargas, and Rafael Miguez-

Criminal No. 13-538 and 13-539 (FAB)                                          3

Balseiro.  (Docket No. 3.)  Defendant Miguez-Balseiro, a psychiatrist, was licensed to practice medicine in Puerto Rico. Id. at p. 1.  According to the indictment, many of defendant Vargas' and Miguez-Balseiro's patients were referred for SSA disability insurance benefits, based on claims of physical and psychiatric disabilities that were supported by the medical practitioners' medical reports.  Id. at pp. 1–3.  Both Vargas and Miguez-Balseiro allegedly received fees for the patients' medical visits as well as a flat fee for sending the medical records to the SSA.  Id.  Defendant Vargas' office then allegedly referred persons to Torres-Crespo, who is not an attorney, who represented the claimants for social security disability insurance benefits and submitted forms to the SSA on behalf of the claimants.  Id. at p. 2.  Defendant Torres-Crespo allegedly charged a fee for his services:  25% of the retroactive benefits paid to SSA disability insurance claimants, calculated from the onset date to the approval date.  Id.

Defendant Torres-Crespo is charged in Counts Three, Nine, Ten and Eleven in the indictment.  (Docket No. 3.)  Count Three accuses defendant of making false statements or representations to the SSA for use in determining social security disability insurance payments for "Person A," in violation of 42 U.S.C. § 408 (a)(3). Id. at pp. 7–8.  Count Nine charges defendant with devising a scheme and artifice to defraud and deprive the Social Security

Criminal No. 13-538 and 13-539 (FAB)                                    4

Administration of money and property using wire communications in interstate commerce, in violation of 18 U.S.C. § 1343.  Id. at pp. 9-11.  In Counts Ten and Eleven, defendant is charged with mail fraud based on a scheme to evade paying taxes, in violation of 18 U.S.C. § 1341.  Id.

**II. Motion to Sever Counts Ten and Eleven**

On August 22, 2014, defendant Torres-Crespo filed a motion for severance in Criminal No. 13-539.  He requests that Counts Ten and Eleven be severed from Counts Three and Nine, because the offenses alleged in Counts Ten and Eleven are not the same or of similar character as the offenses alleged in Counts Three and Nine; do not involve the same transaction; and do not involve a common scheme or plan.  (Docket No. 50 at p. 2.)  From what the Court can glean from the government's amended responses, the government has no objection to severing Counts Ten and Eleven from Counts Three and Nine.  For the following reasons, however, Torres-Crespo's motion for severance is **DENIED.**

Federal Rule of Criminal Procedure 8(a) permits joinder of offenses when they "are of the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Torres-Crespo claims that the charges in Counts Three and Nine constitute "one scheme," and that Counts Ten and Eleven allege a "separate distinct scheme," such that they do not warrant Rule 8(a) joinder.  Contrary to what Torres-Crespo


Criminal No. 13-538 and 13-539 (FAB)                                     5

would have the Court believe, however, the schemes alleged in the four counts are sufficiently connected for Rule 8(a) purposes. Torres-Crespo's alleged fraud to the SSA in Counts Three and Nine generated income and assets that are the basis for the tax evasion charges in Counts Ten and Eleven.  Given that Rule 8(a) is "generously construed in favor of joinder," United States v. Melendez, 301 F.3d 27, 35 (1st Cir. 2002), the Court finds that joinder of Counts Three, Nine, Ten and Eleven is proper.

Defendant Torres-Crespo also argues that despite Rule 8(a), he is entitled to severance pursuant to Federal Rule of Criminal Procedure 14, ("Rule 14"), to avoid prejudice.  The issue, therefore, is whether the joinder of Counts Three, Nine, Ten and Eleven are prejudicial to Torres-Crespo.  That determination "is addressed to the district court's sound discretion." United States v. Richardson, 515 F.3d 74, 80 (1st Cir. 2008).

> Three types of prejudice may result from trying a defendant for several offenses during the same trial:
>
> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissable [sic] in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

Id. at 81 (citing United States v. Jordan, 112 F.3d 14, 17 (1st Cir. 1997)).  Torres-Crespo bases his motion for severance on the third ground.  He only cursorily states, however, that he "may"

Criminal No. 13-538 and 13-539 (FAB)                                    6

want to present testimony in this case, and that if Counts Three and Nine are tried with Counts Ten and Eleven, "the defendant will be forced to waive his right to testify on his behalf and will be left defenseless." (Docket No. 50 at pp. 3-4.)

Defendant Torres-Crespo is not entitled to severance, however, because he fails to make the required "*convincing* showing that he has both important testimony to give concerning one count and [a] strong need to refrain from testifying on the other." Richardson, 515 F.3d at 81 (citations omitted) (emphasis in original). The First Circuit Court of Appeals explicitly requires defendants to "offer sufficient information so that the court can weigh the considerations of judicial economy against the defendant's freedom to choose whether to testify as to a particular charge." Id. (quotations and citations omitted). Here, Torres-Crespo falls short of meeting his burden, because he provides no details as to why he will have to forego his right to testify if the counts are not severed. It is simply unclear what Torres-Crespo means by his argument that he "should be able to defend himself of the Social Security violation charges without having to prove whether he was truthful in the income tax returns of 2009-2010." (Docket No. 50 at p. 4.) Without such a showing, the Court cannot evaluate the significance of his claimed dilemma. As the Court has iterated time and again, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do

Criminal No. 13-538 and 13-539 (FAB)                                   7

counsel's work, create the ossature for the argument, and put flesh on its bones . . . . Judges are not expected to be mindreaders." United States v. Guzman-De Los Santos, 944 F. Supp. 2d 126, 128 (D.P.R. 2013) (Besosa, J.) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) and Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011)).

The Fifth Amendment right against self-incrimination protects Torres-Crespo's right to choose whether or not to testify.  It does not, however, "assure that the testimony will only benefit the defendant."  United States v. Alosa, 14 F.3d 693, 696 (1st Cir. 1994) (citing McGautha v. California, 402 U.S. 183, 213, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971)).

> [O]bvious considerations of judicial economy support trying all related counts against the same defendant at one time.  And while the courts zealously guard a defendant's Fifth Amendment right not to testify at all, the case law is less protective of a defendant's right to testify selectively, addressing some issues while withholding testimony on others that are related.  See Brown v. United States, 356 U.S. 148, 155-56, 2 L. Ed. 2d 589, 78 S. Ct. 622 (1958).

Alosa, 14 F.3d at 695.  Accordingly, Counts Ten and Eleven will be tried together with the other counts of the indictment, and Torres-Crespo's motion to sever is hereby **DENIED**.

**III. Motion for a Change of Venue**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to trial by an impartial jury.  Skilling v. United States, 561 U.S. 358, 377, 177 L. Ed. 2d

619 (2010).  "By constitutional design, that trial occurs 'in the State where the . . . crimes . . . have been committed.'"  Id. at 377-78 (citing Art. III, § 2, cl. 3.)  A defendant may move to transfer the proceeding, however, if "extraordinary local prejudice will prevent a fair trial."  Skilling, 561 U.S. at 378 (citation omitted).

Defendant Torres-Crespo moves for change of venue in both criminal cases 13-538 and 13-539, on the ground of local prejudice.  At the heart of that request is his belief that media coverage surrounding his case has caused the Puerto Rican community to become "deeply hostile" to, "indignant[,] and repulsed by" him. (Docket No. 68 at pp. 5-6.)  He argues that the United States Attorney's Office depicted him "as being the 'mastermind' of the scheme"; that "the [p]retrial and trial publicity in the case of the alleged social security fraud has been pervasive, intense[,] and inflammatory as to produce a trial atmosphere utterly corrupted by press coverage"; and that Torres-Crespo "has suffered the loss of his fair and impartial jury within the island of Puerto Rico." Id. at pp. 1, 3, 5-6.  As a result, he believes he is entitled to a change in trial venue pursuant to Federal Rule of Criminal

Criminal No. 13-538 and 13-539 (FAB)                                    9

Procedure 21(a) and requests to be tried in the Virgin Islands.[1] Id. at p. 7.

In deciding whether to grant a motion for change of venue due to pre-trial publicity, a court must determine "if prejudice [indeed] exists from the publicity." United States v. Orlando-Figueroa, 229 F.3d 33, 42 (1st Cir. 2000) (citation omitted). "It is not enough for a defendant simply to claim that the jurors were exposed to news accounts of the crime. Rather, a defendant must show that the setting of the trial was inherently prejudicial." Id. at 43 (internal quotations and citations omitted). Only when inflammatory publicity "has so saturated a community" such that an impartial jury may not easily be drawn will a change of venue be appropriate. United States v. Brandon, 17 F.3d 409, 441 (1st Cir. 1994).

Defendant Torres-Crespo is not entitled to a change of venue because there is no "ever-prevalent risk that the level of prejudice permeating the trial setting is so dense that [he] cannot possibly receive an impartial trial" in Puerto Rico. See United States v. Quiles-Olivo, 684 F.3d 177, 182 (1st Cir. 2012). Torres-Crespo offers ten headlines from a Puerto Rico newspaper, El Nuevo Día, as evidence of allegedly "pervasive, intense and inflammatory"

---

[1] Rule 21(a) states that a court must transfer a proceeding to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair an impartial trial there." Fed. R. Crim. P. 21(a).

Criminal No. 13-538 and 13-539 (FAB)                                         10

trial publicity.  Torres-Crespo's name appears in six of the newspaper clippings, (Docket No. 76-1 at pp. 2, 5, 7, 9, 10 & 12); he is depicted as one of four prominent players in an article reporting on the inside workings of the fraudulent scheme, id. at pp. 5–6; three articles report that "according to the investigation," Torres-Crespo was the "principal promoter" of the fraud, id. at pp. 6, 10, 12;[2] and one article refers to Torres-Crespo as "the facilitator," id. at p. 9.  A basic internet search[3] for the defendant's name also reveals online articles (1) that report the FBI's "Operation Easy Money," out of which defendant's ultimate indictments emerged; (2) that announce the arrests and indictments of approximately 75 individuals also involved in the social security disability fraud ring; and (3) that periodically inform of updates in the various litigations at the United States District Court for the District of Puerto Rico.  In light of that publicity, the Court would not go as far as the government to say that there was "a paucity of media attention on this case." (Docket No. 79 at p. 6.)  On the whole, however, Torres-Crespo is

---

[2] The Court also found a fourth article online naming Torres-Crespo as the "principal promoter" of the fraud. http://www.elnuevodia.com/acusadosdefraudealsegurossocialpidennegociar-1699904.html.

[3] Because Torres-Crespo claimed that the articles offered constitute a mere "fraction" of the total news coverage dedicated to his case, (Docket No. 68 at p. 3), the Court independently conducted a basic Google search for "Samuel Torres-Crespo."

Criminal No. 13-538 and 13-539 (FAB)                                       11
not the focal point of the news stories, nor is he pinpointed or vilified as a "mastermind," as he claims.

The Court agrees with the government that media coverage has primarily focused on the totality of the arrests and the emerging problem of social security fraud — not on Torres-Crespo individually. His name does appear in the articles, and in some instances he is described as having a lead role in the conspiracy, but his identity is incidentally revealed as part of comprehensive reporting on the SSA investigation and how the four principals fraudulently reaped financial rewards from their fraudulent scheme. That is to say, the news coverage is not inflammatory particularly "against" Torres-Crespo. There is no indication that the stories contain "blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." Skilling, 561 U.S. at 382. Nor has there been any "smoking-gun" evidence that invites prejudgment of his culpability. Id. at 383. Furthermore, the lack of temporal proximity of the media attention and Torres-Crespo's trial weighs heavily against a finding of prejudice. Almost all of the El Nuevo Día articles are from August, September, and October 2013 — only one is dated during the same year as Torres' Crespo's trial:  January 2014. Thus, the media attention followed in the wake of the 75 arrests and indictments and has been virtually nonexistent for the eight months leading up to the September 2014 trial. That trend not only

Criminal No. 13-538 and 13-539 (FAB)                                    12

bolsters a conclusion that the coverage originally targeted the broader SSA disability fraud itself rather than Torres-Crespo specifically and individually, but also lends itself to the conclusion that this is not a case "in which trial swiftly follow[s] a widely reported crime."  Id.

Federal authorities' proclamations that "this fraud has been the worst case that we have had," (Docket No. 76-1 at p. 2), "there is no equal case in history," id. at p. 6, and "this case is the first of many," id. at p. 5, have inherently generated public attention in the months following the 75 arrests connected to the SSA disability fraud.  As the Supreme Court has indicated, however, mere juror exposure to news accounts of the crime does not presumptively deprive the defendant of due process.  Skilling, 561 U.S. at 380; id. at 381 ("Prominence does not necessarily produce prejudice, and juror impartiality, we have reiterated, does not require ignorance.").  Nevertheless, the Court does not find that the general media coverage regarding the fraud demonstrates prejudice — let alone "extraordinary local prejudice" — preventing

Criminal No. 13-538 and 13-539 (FAB)                              13

Torres-Crespo from receiving a fair trial in Puerto Rico.[4]

Moreover, it is notable that the First Circuit Court of Appeals:

> has affirmed denials of motions to change venue or postpone trial due to pre-trial publicity in cases involving much more high-profile, sensational criminal activity. See, e.g., United States v. Angiulo, 897 F.2d 1169, 1180-83 (1st Cir. 1990) (involving multi-defendant RICO trial of leading Boston organized crime figures); United States v. Moreno-Morales, 815 F.2d 725, 729-31 (1st Cir.), *cert. denied*, 484 U.S. 966 (1987) (involving police shooting of two supporters of Puerto Rican independence and allegations in the press and at televised hearings before Puerto Rico's Senate that the police officers had murdered the activists after they had been captured and fully subdued).  Other courts of appeals have done the same. See, e.g., United States v. Maldonado-Rivera, 922 F.2d 934, 966-67 (2d Cir. 1990) (involving $7 million Brinks robbery by Puerto Rican independence group "Los Macheteros."), *cert. denied*, 501 U.S. 1233 (1991).

Orlando-Figueroa, 229 F.3d at 44.  Accordingly, a change in venue is not appropriate in this case, and defendant Torres-Crespo's motion requesting it is **DENIED**.

---

[4] The Court thus regards *voir dire*, and not a change of venue, as the appropriate means of adequately ensuring an impartial jury in this case.  The very purpose of *voir dire* is to determine the impartiality and/or reveal the bias of jurors, United States v. Medina, 761 F.2d 12, 20 (1st Cir. 1985), and the effect of any pretrial publicity will be inquired upon at the time prospective jurors are *voir dired*. United States v. Gullion, 575 F.2d 26, 28 (1st Cir. 1978) (finding no abuse of discretion in denying a motion for a change in venue until the trial judge could consider the effect of any pretrial publicity at *voir dire*).  "[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire."  United States v. Haldeman, 559 F.2d 31, 61 (D.C. Cir. 1976).

**IV. Conclusion**

Defendant Torres-Crespo's motions for a change of venue in Criminal No. 13-538, (Docket Nos. 68 & 76) and Criminal No. 13-539, (Docket Nos. 54 & 65), are **DENIED**.  His motion to sever Counts Ten and Eleven in Criminal No. 13-539, (Docket No. 50), is also **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 27, 2014.

> s/ Francisco A. Besosa
> FRANCISCO A. BESOSA
> United States District Judge